PER CURIAM:
Claimant brought this action for personal injuries and damage to her vehicle which occurred when she was operating her vehicle on the Route 60 bridge that crosses Coal River in St. Albans, Kanawha County, and a portion of the pavement gave way creating a large hole which the vehicle struck. Respondent stipulated to liability in this claim. Therefore, the only issue this Court shall address is the issue of damages.
The incident giving rise to tins claim occurred on August 1, 2000, at approximately 1:00 p.m. Claimant, Melissa Shaffer, was traveling westbound on Route 60 with her mother and two children as passengers. She was traveling in the left lane as she crossed the bridge over Coal River. Suddenly, a large portion of the pavement gave way as her vehicle crossed it. A large hole was created where the pavement gave way causing the passenger side tires to fall into the hole. The impact jerked claimant to the right when the right front tire struck the hole. She was able to hold onto the steering wheel as the back right tire struck the hole. However, this impact caused her to be thrown to the back and to the right. Claimant was able to maneuver her vehicl e out of the hole and off the bridge. She drove the vehicle to the Amandaville side of the bridge and parked it on Hie side of Route 60. Fortunately, claimant’s two children and her mother were not injured in this incident. A friend of claimant’s mother happened to be driving home from work when he observed claimant’s vehicle on the side of the road. He took the children and claimant’s mother home while claimant remained at the scene with the automobile. She called the police and Hensley’s Towing Company, who arrived on the scene. In addition, claimant called Grover Call, a friend. According to the claimant, the police arrived at the scene and completed a report of the incident and observed the hole in the bridge. Claimant’s vehicle had to be towed from the scene due to the damage to the two tires. Mr. Call drove claimant to respondent’s local office in St. Albans, where he went inside to discuss what could be done to have claimant’s vehicle repaired. As a result of the impact, both right side wheels and tires had to be replaced. In addition, claimant’s vehicle had to have a four wheel alignment. Claimant submitted an estimate for the damage to her vehicle and the towing bill in the amount of $645.92. However, claimant had automobile insurance coverage at the time of this incident which covered all but the amount of the deductible in the amount of $250.00. Thus, claimant may only recover the amount of her deductible as an out-of-pocket expense for the damage to her vehicle.
Claimant arrived at her home between 6:00 p.m. and 7:00 p.m. later that same evening. She testified that once she got home she sat down to rest and she then felt tired and drained from the event. She stated that she took two Tylenols and went to bed. According to claimant, when she woke up the next morning she felt stiff and sore. Specifically, she stated that she had pain in her right arm and shoulder, as well as her neck and mid-back. Claimant testified that she had not had this type of pain prior to this incident. Seven days later on August 8,2000, claimant went to her family physician, Dr. Molano in Hurricane, Putnam County. She was complaining of back and neck pain as well as headaches. Dr. Molano prescribed pain medication and a muscle relaxant which she took. However, according to the claimant these medications made her feel tired all the time. Claimant stated that she continued to have pain and went to see Dr. Molano again on August 24, 2000, for the same medical issues as before which were neck pain, back pain, shoulder pain and headaches. Claimant testified that on September 1,2000, *39 she contacted Dr. Harold L. Casto regarding her condition.
Dr. Casto, a licensed chiropractor in the State of West Virginia, testified as an expert witness in the field of chiropractic medicine at the hearing of this matter. Dr. Casto testified that he treated claimant for injuries she sustained in the incident at issue in this claim. Her first visit was on September 1,2000, when she initially complained of mid-back pain and stiffness along with intercostal pain, which is pain in the rib area located laterally from the spinal area. Claimant also complained of headaches, pain in the right side of her neck, and bilateral shoulder tightness and pressure. Dr. Casto performed a medical evaluation including radiographs of the cervical and dorsal spinal areas. These tests indicated that claimant suffered from cervical and thoracic sprain/strain type injuries. Dr. Casto described these sprain/strain injuries as the stretching or tearing of the soft tissue structures such as ligaments and tendons. In addition, Dr. Casto performed a comprehensive examination on claimant on September 7, 2000, which entailed the observation of claimant’s posture, and various orthopedic tests. As a result of these examinations, Dr. Casto determined that claimant had traumatically induced scoliosis as well as muscle spasms, tenderness, and tightness in her mid-back area. She also exhibited muscle irritation, tightness, and splinting dining the foraminal impression test which checked her range of motion. Claimant also had a decreased range of motion in the cervical and dorsal spinal areas as well as the thoracic region of her back. Dr. Casto’s diagnosis as to claimant’s condition on September 7, 2000, was cervical sprain/strain, thoracic sprain/strain, cervical brachial neuralgia, which is shoulder pain, and post traumatic headaches. Further, he testified that x-rays of the cervical area demonstrated that claimant had lost the normal forward curve of her neck, which will cause claimant’s neck not to be as strong as it was prior to the injury. Dr. Casto testified to a reasonable degree of medical certainty that claimant’s injuries were caused by the traumatic experience when she was whipped around in her vehicle during the vehicular accident on August 1, 2000.
After diagnosing claimant’s injuries and condition, Dr. Casto established a treatment plan for claimant, which included multiple “physiotherapeutical modalities.” Dr. Casto used moist heat packs and ultrasonation to provide deep heating therapy. He also used electrical muscle stimulation and performed manipulative therapy which involves the placing of his hands on the claimant’s injured areas to move the bones closer to their normal position. According to Dr. Casto, claimant did not respond to the first series of treatments as well as he had expected. He attributes this in part to the fact that claimant was unable to come to her appointments on a daily basis due to her work schedule. Dr. Casto stated that he reexamined the claimant on October 24, 2000, at which time he noted that claimant’s condition was responding in a positive manner to treatment. Specifically, he stated that the pain in her neck and mid-back had decreased and that her range of motion had improved. At this point in her treatment, Dr. Casto decided to not place claimant on a regular treatment program, but instead, he treated her on a basis that would not conflict with her work schedule. Claimant continued to receive treatment from Dr. Casto through 2001. Dr. Casto testified that claimant continued to complain of mid-back pain and intercostal pain. Claimant also informed Dr. Casto that this pain was interfering with her work duties. Therefore, he ordered that claimant have an MRI (Magnetic Resource Imaging) performed on February 5,2001, to rule out various orthopedic and neurological problems. Claimant had an MRI performed at Putnam General Hospital. The MRI was negative for any disc herniation. Given that the MRI was negative, Dr. Casto testified that in his opinion there was no need at the time of his last examination for claimant to have surgery on her neck or back because there were no *40 problems that an orthopedic surgeon or neurosurgeon could operate on.
The last túne Dr. Casto treated claimant was on November 19, 2002. Dr. Casto testified that according to his records claimant was still having pain in her right shoulder and pain and numbness throughout her right arm and hand. She complained of moderate to severe muscle spasms on the right side of her neck, as well as moderate to severe muscle spasms in her mid-back. As of November 19, 2002, Dr. Casto, noted that claimant’s physical condition had not changed overall and he directed her to come in on an as needed basis. Dr. Casto and claimant agreed that claimant’s work schedule made it difficult for her to come in on a regular basis. Dr. Casto testified that claimant’s injuries are chronic in nature. Dr. Casto testified that a chronic injury is one where after a three month period a person is still having pain and all healing that is going to take place has already taken place. He stated that a chronic condition such as claimant’s will not be resolved as easily as an acute injury. It is Dr. Casto’s opinion, based upon a reasonable degree ofmedical certainty, that claimant’s injuries are chronic andpermanent in nature. His prognosis for claimant is that these problems are permanent in nature and will be with her for the rest of her life.
Claimant incurred medical expenses as a result of the injuries sustained in this incident. Claimant visited Dr. Molano on two different occasions as a result of this incident. She incurred medical bills from these visits to Dr. Molano’s office in the amount of $130.00. However, claimant had medical payment insurance coverage through her automobile insurance policy with a policy limit of $5,000.00[1]. The automobile insurance policy paid a total of $130.00 to Dr. Molano. Claimant incurred a total of $10,335.00 in medical expenses as aresult of treatment at Dr. Casto’s office, beginning on September 1, 2000, and continuing on a fairly regular basis until October 11, 2001, as well as approximately seven visits in 2002. In addition, claimant incurred an expense at Putnam General Hospital for the MRI in the amount of $1,307.50 and an expense of $304.00 from Radiology, Inc., for reading the MRI. Therefore, claimant incurred a total of $12,076.50 in medical expenses. Claimant had $5,000.00 of medical payment insurance coverage available as a collateral source which will be deducted from the total award of medical expenses. Thus, claimant’s total recoveiy for medical expenses is $7,076.50 and her total of special damages including the $250.00 insurance deductible for the property damage is $7,326.50.
Claimant testified that she continues to suffer from back pain, shoulder pain and numbness, and headaches. She testified that she did not have any of these problems prior to this incident. According to claimant, her daily activities have been affected as a result of this pain including her ability to perform her duties at work. She stated that the pain irritates her while performing certain daily activities and that she has to stop doing whatever that activity may be that causes her pain or discomfort. Claimant stated that, she was able to work the drive-thru at Wendy’s, which was one of her duties as the Assistant Manager, but she is no longer able to do so. She is unable to play with her children as she did before. She stated that she used to hold her three year old daughter often but she does not do that because of the pain. In addition, she no longer plays ball *41 with her five year old as she used to before the incident. Based upon the testimony regarding claimant’s injuries, the pain and suffering associated with them, and the effects these injuries have had on her daily life and recreational activities, the Court has determined that claimant should be granted an award in the amount of $75,000.00 for the effect upon her life now and in the future.
Therefore, in view of the foregoing, the Court is of the opinion to and does hereby make an award to claimant in the amount of $82,326.50.
Award of $82,326.50.

 Although claimant had $5,000.00 in health coverage through her automobile insurance policy, she chose not to take advantage of this resource. This Court has held that any insurance benefits available to a claimant constitutes a collateral source whether or not claimant accessed the insurance coverage available.